UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

NAOMI JEAN BATES,               )     NO. ED CV 14-1718-E
                                )
            Plaintiff,          )
                                )
     v.                         )     **MEMORANDUM OPINION**
                                )
CAROLYN W. COLVIN, Acting       )
Commissioner of Social Security,)
                                )
            Defendant.          )
_____ )

**PROCEEDINGS**

Plaintiff filed a Complaint on August 25, 2014, seeking review of the Commissioner's denial of benefits. The parties filed a consent to proceed before a United States Magistrate Judge on September 29, 2014.

Plaintiff filed a motion for summary judgment on January 26, 2015. Defendant filed a motion for summary judgment on April 27, 2015. The Court has taken both motions under submission without oral argument. See L.R. 7-15; "Order," filed September 3, 2014.

///

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

Plaintiff asserted disability since July 20, 2008, based on a variety of alleged physical and psychiatric impairments (Administrative Record ("A.R.") 70-81, 104-13, 241-42, 263). Following a previous stipulated remand, the Administrative Law Judge ("ALJ") examined the medical record and heard testimony from Plaintiff, a medical expert and a vocational expert (A.R. 4-1065).

The ALJ found Plaintiff has severe "cervical spondylosis, lumbar degenerative disc disease of the lumbar spine; asthma; hypothyroidism Hashimoto;[1] obesity; lupus; fibromyalgia;[2] sleep apnea; Sjogren's . . . syndrome[3]" (A.R. 7). The ALJ also found, however, that Plaintiff retains the residual functional capacity to perform a limited range of light work (A.R. 7). In making this finding, the ALJ discounted the credibility of Plaintiff and Plaintiff's husband (A.R.

---

[1]  "In Hashimoto's disease, also known as chronic lymphocytic thyroiditis, a person's immune system attacks his or her thyroid gland, and the resulting inflammation often leads to an underactive thyroid, also known as hypothyroidism.  Treatment of Hashimoto's disease with thyroid hormone replacement is usually simple and effective."  Bertel v. Astrue, 2012 WL 3679201, at *7 n.12 (D. Nev. July 30, 2012), adopted, 2012 WL 3562547 (D. Nev. Aug. 17, 2012) (citations and quotations omitted).

[2]  Fibromyalgia has been described as "a common, but elusive and mysterious, disease" whose "symptoms are entirely subjective."  Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996).  "Some people may have such a severe case of fibromyalgia as to be totally disabled from working; but most do not."  Id.

[3]  "Sjogren is an autoimmune disease causing dryness of the mouth, eyes and other tissues."  Rohrbach v. Colvin, 2015 WL 1006678, at *5 n.4 (C.D. Cal. March 5, 2015).

8-9).   In reliance on the testimony of the vocational expert, the ALJ determined that there exist significant numbers of jobs performable by a person having the identified residual functional capacity (A.R. 11-13).   The ALJ therefore denied disability benefits (A.R. 13-14).

**STANDARD OF REVIEW**

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards.   See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007); see also Brewes v. Commissioner, 682 F.3d 1157, 1161 (9th Cir. 2012).   Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and quotations omitted); see Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).

> If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ.   But the Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [administrative] conclusion.

///

///

1  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citations and
2  quotations omitted).

4                              **DISCUSSION**

6       After consideration of the record as a whole, Defendant's motion
7  is granted and Plaintiff's motion is denied.  The Administration's
8  findings are supported by substantial evidence and are free from
9  material[4] legal error.  Plaintiff's contrary arguments are unavailing.

11  **I.   Substantial Evidence Supports the Conclusion Plaintiff Can Work.**

13       The medical evidence provides little support for Plaintiff's
14  claim of disability and substantial support for the ALJ's rejection of
15  that claim.  Extensive medical testing during the alleged period of
16  disability revealed little or no objective basis for many of
17  Plaintiff's subjective complaints (A.R. 396 (normal CT head scan in
18  September of 2008); 397 (normal x-ray of right hand in September of
19  2008); 399 (normal chest x-ray in June of 2008); 512-14 (normal EEG in
20  January of 2010); 515-16 (normal EEG in October of 2009); 517-19
21  (normal EEG in September of 2009); 520-21 (normal EKG in August of
22  2009); 531 (normal chest x-ray in March of 2010); 535 (normal cervical
23  spine x-ray in November of 2009); 536 (normal MRI of head in September
24  of 2009); 635 (normal colonoscopy in March of 2011); 636-37 (normal

---

26       [4]    The harmless error rule applies to the review of
administrative decisions regarding disability.  See Garcia v.
27  Commissioner, 768 F.3d 925, 932-33 (9th Cir. 2014); McLeod v.
Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart,
28  400 F.3d 676, 679 (9th Cir. 2005).

1  endoscopy in March of 2011); 640-41 (normal x-rays of hands, wrists,

2  pelvis and hips in June of 2011); 979 (normal pelvic ultrasound in

3  June of 2013); 1038 (normal CT of head in March of 2010)).

4

5      Plaintiff claimed she quit work in 2008 because of, _inter_ _alia_,

6  problems with her lungs (A.R. 104).  Plaintiff has had asthma since

7  childhood, however, and her treatment records show that her asthma was

8  stable without acute flare-ups as of November of 2008 (A.R. 333, 370).

9

10     Plaintiff complains of symptoms allegedly related to autoimmune

11  problems (including Sjogren's syndrome).  Plaintiff's treating

12  rheumatologist did not believe that Sjogren's syndrome or any other

13  alleged autoimmune problems disabled Plaintiff from employment (A.R.

14  352).

15

16     Cervical spine and lumbar spine CT scans and MRIs did show some

17  disc desiccation, some mild degenerative changes, some disc protrusion

18  and mild disc bulges (A.R. 532-34, 606, 972-74, 1049).  Plaintiff's

19  most recent lumbar spine MRI in July of 2013 actually shows

20  improvement over the previous MRI, however (A.R. 976-77).  None of

21  Plaintiff's treating physicians appear to have opined that any of

22  these alleged orthopedic problems would disable Plaintiff from all

23  employment.  Dr. Chukwuemeka Ezike, the medical expert, opined

24  Plaintiff retains a residual functional capacity consistent with the

25  capacity the ALJ found to exist (A.R. 87-92).  The state agency

26  physicians concurred (A.R. 551-60, 584-93).  Where, as here, the

27  opinions of non-examining physicians do not contradict "all other

28  evidence in the record," an ALJ properly may rely on these opinions.

1   See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); Curry v.

2   Sullivan, 925 F.2d 1127, 1130 n.2 (9th Cir. 1990).

3

4        With respect to Plaintiff's alleged psychiatric problems,

5   examining psychiatrist Dr. Linda Smith opined in October of 2009 that

6   Plaintiff had no psychiatric impairment of her ability to work (A.R.

7   562-69).  Dr. Smith also stated that "[i]t appears she is attempting

8   to claim to have 'PTSD' but I do not see any evidence of this.  It

9   appears she is attempting to claim that she might disassociate at

10  times, but she really cannot describe this either in any credible

11  fashion" (A.R. 568).  State agency physicians similarly opined

12  Plaintiff has no significant mental impairment (A.R. 570-83).

13

14       Although some of the evidence appears to be in conflict, it is

15  the prerogative of the ALJ to resolve conflicts in the record.  See

16  Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001).  When evidence "is

17  susceptible to more than one rational interpretation," the Court must

18  uphold the administrative decision.  See Andrews v. Shalala, 53 F.3d

19  at 1039-40; accord Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir.

20  2002); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).  The

21  Court will uphold the ALJ's rational interpretation of the evidence in

22  the present case notwithstanding any conflicts in the record.

23

24       The vocational expert testified that a person with the residual

25  functional capacity the ALJ found to exist could perform jobs existing

26  in significant numbers in the national economy (A.R. 92-98).  The

27  vocational expert's testimony furnishes substantial evidence there

28  exist significant numbers of jobs Plaintiff can perform.  See Burkhart

1  v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); see also Barker v.

2  Secretary, 882 F.2d 1474, 1478-80 (9th Cir. 1989); see generally

3  Johnson v. Shalala, 60 F.3d 1428, 1435-36 (9th Cir. 1995) (ALJ

4  properly may rely on vocational expert to identify jobs claimant can

5  perform); 42 U.S.C. § 423(d)(2)(A).

6

7  **II.  The ALJ Did Not Materially Err in Discounting the Credibility of**

8  **Plaintiff or Plaintiff's Husband.**

9

10  An ALJ's assessment of a claimant's credibility is entitled to

11  "great weight."  Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir.

12  1990); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985).  Where, as

13  here, the ALJ finds that the claimant's medically determinable

14  impairments reasonably could be expected to cause some degree of the

15  alleged symptoms of which the claimant subjectively complains, any

16  discounting of the claimant's complaints must be supported by

17  specific, cogent findings.  See Berry v. Astrue, 622 F.3d 1228, 1234

18  (9th Cir. 2010); Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995);

19  but see Smolen v. Chater, 80 F.3d 1273, 1282-84 (9th Cir. 1996)

20  (indicating that ALJ must offer "specific, clear and convincing"

21  reasons to reject a claimant's testimony where there is no evidence of

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

malingering).[5]   An ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony."  See Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal citations and quotations omitted); see also Social Security Ruling 96-7p.  As discussed below, the ALJ stated sufficient reasons for deeming Plaintiff's subjective complaints less than fully credible.

In discounting Plaintiff's credibility, the ALJ placed principal reliance on perceived inconsistencies between Plaintiff's allegedly incapacitating symptomatology and her daily activities (A.R. 8-9). With regard to her alleged symptomatology, Plaintiff claimed: she must spend "90 percent" of her time in bed in her pajamas; she suffers pain everywhere in her body; she wakes up "with swollen body parts and cannot use them"; she cannot put on her socks and shoes or button her clothes on her own; she drops things regularly and falls down regularly; she has panic attacks; and she exists in a constant state of anxiety (A.R. 75, 78-79, 106, 108-09, 263).  Yet, the record reflects a wide range of daily activities inconsistent with the

---

[5]   In the absence of an ALJ's reliance on evidence of "malingering," most recent Ninth Circuit cases have applied the "clear and convincing" standard.  See, e.g., Burrell v. Colvin, 775 F.3d 1133, 1136-37 (9th Cir. 2014); Chaudhry v. Astrue, 688 F.3d 661, 670, 672 n.10 (9th Cir. 2012); Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012); Taylor v. Commissioner, 659 F.3d 1228, 1234 (9th Cir. 2011); see also Ballard v. Apfel, 2000 WL 1899797, at *2 n.1 (C.D. Cal. Dec. 19, 2000) (collecting earlier cases).  In the present case, the ALJ's findings are sufficient under either standard, so the distinction between the two standards (if any) is academic.

incapacity Plaintiff claims.  For example, during all of part of the
alleged period of disability, Plaintiff took care of her grandson for
four hours each day, swept, dusted, did dishes, cooked for and looked
after her 17 year old son, and shopped for groceries two to three
hours at a time (A.R. 274-76, 1008).  The ALJ properly relied on the
inconsistencies between Plaintiff's claims and her demonstrated
activities in discounting Plaintiff's credibility.  See, e.g., Thune
v. Astrue, 499 Fed. App'x 701, 703 (9th Cir. 2012) (ALJ properly
discredited pain allegations as contradicting claimant's testimony
that she gardened, cleaned, cooked, and ran errands); Stubbs-Danielson
v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008) (claimant's "normal
activities of daily living, including cooking, house cleaning, doing
laundry, and helping her husband in managing finances" was sufficient
explanation for rejecting claimant's credibility); Burch v. Barnhart,
400 F.3d 676, 680 (9th Cir. 2005) ("In determining credibility, an ALJ
may engage in ordinary techniques of credibility evaluation, such as
considering . . . inconsistencies in claimant's testimony.").

    Accordingly, the ALJ stated sufficient reasons to allow this
Court to conclude that the ALJ discounted Plaintiff's credibility on
permissible grounds.  See Moisa v. Barnhart, 367 F.3d at 885.  The
Court therefore defers to the ALJ's credibility determination.  See
Lasich v. Astrue, 252 Fed. App'x 823, 825 (9th Cir. 2007) (court will
defer to ALJ's credibility determination when the proper process is
used and proper reasons for the decision are provided); accord Flaten
v. Secretary of Health & Human Services, 44 F.3d 1453, 1464 (9th Cir.
1995).

///

1      The ALJ also properly discounted the credibility of Plaintiff's

2  husband.  As the ALJ pointed out, the husband's statements "mirrored

3  the claimant's allegations" (A.R. 9; see A.R. 281-88).  An ALJ may

4  discount lay witness statements where the statements are similar to

5  the claimant's testimony and the ALJ has given legally sufficient

6  reasons for discounting the claimant's testimony.  See Valentine v.

7  Commissioner Social Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009)

8  ("In light of our conclusion that the ALJ provided clear and

9  convincing reasons for rejecting Valentine's own subjective

10  complaints, and because Ms. Valentine's testimony was similar to such

11  complaints, it follows that the ALJ gave germane reasons for rejecting

12  her testimony").  Because the ALJ's discounting of Plaintiff's

13  testimony was proper, the ALJ's discounting of the husband's similar

14  statements was also proper.  See id.

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

**CONCLUSION**

For all of the foregoing reasons,[6] Plaintiff's motion for summary judgment is denied and Defendant's motion for summary judgment is granted.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: May 14, 2015.

_____/S/_____
                CHARLES  F.  EICK
       UNITED  STATES  MAGISTRATE  JUDGE

---

[6]    The Court has considered and rejected each of Plaintiff's arguments.  Neither Plaintiff's arguments nor the circumstances of this case show any "substantial likelihood of prejudice" resulting from any error allegedly committed by the Administration.  See generally McLeod v. Astrue, 640 F.3d 881, 887-88 (9th Cir. 2011) (discussing the standards applicable to evaluating prejudice).